United States District Court
Northern District of Alabama
Western Division

**David Ogden and Camilla Ogden,**    ]
                                       ]
    Plaintiffs,                        ]
                                       ]
    vs.                                ]    CV-01-N-2068-S
                                       ]
**Blue Bell Creameries USA, Inc.,**    ]
                                       ]
    Defendant.                         ]
                                       ]

ENTERED
NOV 18 2002

**Memorandum of Opinion**

**I. Findings of Fact and Procedural History**

This cause is presently before the court for disposition after a bench trial on November 17, 2002. David Ogden was an employee of the defendant, Blue Bell Creameries, Inc., at its office located in Birmingham, Alabama. As a Blue Bell employee, David Ogden became a member of the Blue Bell Welfare Benefits Plan ("the Plan"), a comprehensive benefits package that included Health and Hospital Insurance. From August 1-5, 1997, David Ogden's wife, Camilla Ogden, who was covered by the Plan, was treated at Baptist-Montclair Hospital for "Acute Appendicitis with Meckels Diverticulitis." Her medical bills, which included surgery and surgical follow-ups, totaled $30,456.00.

1



Shortly after her discharge, Camilla Ogden used the 800 number printed on the back of her insurance card to contact Blue Bell's third party administrator, ASO of North America, Inc. ("ASO") and report her claim for benefits payable under the Plan. At ASO's request, Camilla Ogden provided copies of her medical bills and other associated records. After approximately two years with no resolution of the claim, the Ogdens sought legal advice from attorney Sam Wiggins. By telephone, a representative of ASO informed Wiggins that the claim had been denied due to a "pre-existing condition." On June 30, 1999, the Ogdens filed suit against ASO and Blue Bell in the Circuit Court of Jefferson County, Alabama, stating, inter alia, a breach of contract claim.

In a letter dated November 4, 1999 attorney W. Fulton Broemer, representing Blue Bell, informed Wiggins that all records relating to the Ogden's claim held by ASO were "probably lost," due to the fact ASO was no longer in business. Broemer then requested records relating to Camilla's claim for Blue Bell's new third party administrator to review. On November 9, 1999, Wiggins sent copies of the Ogdens' medical bills to Broemer.

On Novemeber 19, 1999, the Circuit Court of Jefferson County issued an alias summons and complaint which was served on Blue Bell on October 25, 1999. On December 14, 1999, Broemer notified Wiggins that he had been unable to recover any records relating to the claim from ASO and stated, "[I]t is my opinion ASO simply failed to process this claim . . . . Because we are in receipt of no information indicating that this claim was denied by ASO, we will treat it as an initial claim filing, rather than an appeal of a denied claim." Additionally, Broemer acknowledged Wiggins's agreement not to serve Blue Bell notice of process "until Blue Bell has had an adequate opportunity

2

to review Mrs. Ogden's claim . . . ." Wiggins sent additional records to Broemer on February 20, 2000 and May 1, 2000.

On February 23, 2000, the Circuit Court of Jefferson County entered an order sua sponte dismissing the action because "no service was performed on defendant, ASO North America, and because no answer and/or default was ever entered as to the defendant, Bluebell Creameries USA, Inc." On January 10, 2001, the Ogdens filed a motion for reconsideration which has never been resolved. The Ogdens then filed a second action against Blue Bell in the Circuit Court of Jefferson County, Alabama, on May 31, 2001 alleging, inter alia, breach of contract. On August 16, 2001, Blue Bell removed the case to this court, alleging that the Ogdens' claims are completely preempted by ERISA. The Ogdens then amended their complaint, seeking payment of benefits and equitable relief under ERISA.

## II. Conclusions of Law

### A. Res Judicata

Blue Bell alleges that the court may not reach the merits of the Ogdens' ERISA claims because the Ogdens' second suit, filed in state court and removed to this court, is barred by the claim preclusive effect of the Circuit Court of Jefferson County's dismissal of the Ogdens' first suit. It is well settled that the Full Faith and Credit Act, 28 U.S.C. § 1738, requires that this court give a state court's judgment the same preclusive effect that another court of the state of Alabama would accord the judgment. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 384 (1985); *Migra v. Warren City School Dist. Bd. of Ed.*, 465 U.S. 75, 81 (1984). Under Alabama law, four elements

3

must be established for a prior judgment to bar relitigation of a claim as res judicata: (1) the prior judgment must have been rendered by a court of competent jurisdiction; (2) the parties to both suits must be substantially identical; (3) the same cause of action must be presented in both suits; and (4) the prior judgment must have been on the merits. *Reliance Insurance Co. v. Substation Products Corp.*, 404 So. 2d 598, 605 (Ala. 1981).

The second element of the test is easily met, for the identical parties are now before this court who were before the Circuit Court of Jefferson County in the first case filed by the Ogdens. Likewise, the third element is clearly satisfied because both the original suit filed in state court and the second suit filed in state court and removed to this court state claims for payment under the Ogdens' health insurance plan provided by Blue Bell. While the Ogdens' first claims were stated under state law and the claims currently before this court are based on ERISA, the Supreme Court of Alabama has stated that the "same cause of action" element is not to be read too narrowly. Indeed, a "former suit bars any later suit on the same cause of action, including issues that were or could have been litigated in the prior case." *Lott v. Toomey*, 477 So. 2d 316, 319 (Ala. 1985). Whether styled as state law breach of contract claims or as ERISA claims, the Ogdens' claims are essentially for payment of health benefits under a benefits plan.

Whether the state court that first dismissed the Ogdens' claims had "competent jurisdiction" is more complicated. ERISA provides in pertinent part, "Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this title brought by . . . a . . .

4

beneficiary."[1] 29 U.S.C. § 1132(e)(1). Thus, the state courts have concurrent jurisdiction to hear claims under 29 U.S.C. § (a)(1)(B), which provides beneficiaries with a cause of action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Therefore, the Circuit Court of Jefferson County had jurisdiction over the Ogdens' suit to recover benefits allegedly due under the Plan.

The final element that this court must address to determine whether the Ogdens' suit is barred is whether the decision of the original state court was "on the merits." Under Alabama Rule of Civil Procedure 41(b):

> For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.

Ala. R. Civ. P. 41(b). It is well settled under Alabama law that "a court possesses the inherent power to act sua sponte to dismiss an action for failure of the plaintiff to prosecute," *Wal-Mart Stores v. Caples*, 646 So. 2d 1328, 1330 (Ala. 1994), and that "[s]uch a dismissal, unless otherwise specified in the order, operates as an adjudication on the merits." *Id*. Alabama courts have made it clear that "the phrase 'failure to prosecute,' as it is used in Rule 41(b), does not require affirmative steps by the plaintiff to delay the trial. Instead, it is sufficient that the plaintiff does nothing, knowing that until

---

[1] ERISA defines a "beneficiary" as: "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). It is not disputed that Camilla Ogden was designated as a beneficiary under Blue Bell's Welfare Benefits Plan.

something is done there will be no trial." *Mims v. Citizens Bank of Prattville*, 581 So. 2d 824, 825 (Ala. 1991). "Failure to prosecute" has also specifically been interpreted by Alabama courts as including failure to attempt to serve a defendant within a reasonable time. *Hill v. Hawkins*, 582 So. 2d 1105, 1106 (Ala. 1991). Here, the Circuit Court of Jefferson County dismissed the Ogdens' first suit against Blue Bell because "no service was performed on defendant, ASO North America, and because no answer and/or default was ever entered as to the defendant, Bluebell Creameries USA, Inc." While the state court did not specify that its sua sponte dismissal of the Ogdens' suit was for failure to prosecute, it seems clear that failure to prosecute, indeed, was the underlying rationale.[2] The state court apparently dismissed the Ogdens' suit sua sponte because the Ogdens "did nothing." Consequently, under Rule 41(b), the dismissal was for lack of prosecution and on the merits. Therefore, the court holds that the Ogdens' claim against Blue Bell to recover payment under Blue Bell's Welfare Benefits Plan is barred by res judicata.

### B. Equitable Relief

However, the Ogdens' claims go beyond the scope of § 502(a)(1)(B). 29 U.S.C. § 1132(a)(1)(B). The Ogdens additionally seek equitable relief under § 502(a)(3). 29 U.S.C. § 1132(a)(3). Because ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1), grants the federal courts *exclusive* jurisdiction over such claims, this court cannot hold that the

---

[2] It must also be noted that an involuntary dismissal may be set aside, like any other judgment, on proper motion under Rule 60(b). A rehearing may be requested under Rule 59(a)(2) and amendments to the court's findings may be pursued under Rule 52(b). However, the Ogdens waited 11 months before filing a motion for reconsideration with the state court, and the motion was not resolved.

6

state court was one of "competent jurisdiction" for the Ogdens' claims for equitable relief within the scope of ERISA § 502(a)(1)(B), and therefore, such claims are not precluded by the state court's dismissal. *See Pension Trust Fund for Operating Engineers v. Triple A Machine Shop, Inc.*, 942 F.2d 1457 (9th Cir. 1991) (holding that a state court's dismissal of an ERISA fiduciary's claims based on ERISA §§ 502(a)(3) and (g)(2) did not preclude a federal court from adjudicating those claims because the state court lacked jurisdiction over such claims under ERISA § 1132(e)(1)).

ERISA specifically provides for an action "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan." 29 U.S.C. § 1132(a)(3). The Eleventh Circuit has stated, "Interpreting the term 'appropriate equitable relief' narrowly to include those types of relief traditionally available at equity, like injunction, declaratory relief, and restitution, is consistent with the interpretation by the Supreme Court of the same phrase in ERISA." *Brett v. Jefferson County*, 123 F.3d 1429, 1435 n.14 (11th Cir. 1997) (citing *Mertens v. Hewitt Assocs.*, 508 U.S. 248 (1993)).

The terms of the Plan identify Blue Bell as the "Plan Administrator" with the "authority to control and manage the operation and administration of the plan, including discretionary and final authority to determine eligibility for benefits, actual coverage, payment of benefits, and final authority to construe all terms under the plan."[3] As such

---

[3] Under ERISA § 3(16)(A), the administrator of a plan is "(i) the person specifically so designated by the terms of the instrument under which the plan is operated . . . ." 29 U.S.C. § 1002(16)(A).

Blue Bell is an ERISA "fiduciary"[4] with certain defined duties under ERISA § 404, 29 U.S.C. § 1104, and the common law of trusts. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110 (1989). Under ERISA § 404(a)(1) a fiduciary's duties include acting "solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). While fiduciary obligations may be delegated, *Presley v. Blue Cross-Blue Shield*, 744 F. Supp. 1051, 1058 (N.D. Ala. 1990), a fiduciary's general duty of care requires the fiduciary to keep abreast of the activities of any co-fiduciaries and to correct past administrative problems that were not taken in accordance with the plan. *See Blue Cross and Blue Shield of Alabama v. Weitz*, 913 F.2d 1544 (11th Cir. 1990) (holding that a fiduciary could seek equitable relief against a provider where the provider made payments inconsistent with the terms of a benefits plan).

Here, the Plan gives ASO the responsibility to "process medical claims under the medical plan," but provides that Blue Bell, as Plan Administrator, has "discretionary and *final* authority to determine eligibility for benefits," and further provides that upon receipt of a written denial of benefits notice, beneficiaries may "submit a written request to the plan administrator for review of the denial." The Ogdens never received any written denial of benefits notice and, indeed, Blue Bell offered to review the Ogdens' claim as an "initial claim filling" but has apparently never done so. While the court does not attribute any possible wrong committed by ASO to Blue Bell, under the terms of the Plan and under the duties imposed on it as a fiduciary, th court does find that Blue Bell had a

---

[4] ERISA § 3(21)(A) defines "fiduciary" as "a person . . . with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets."

8

duty to see that the Ogdens' claim was properly reviewed. In accordance with the court's power to grant equitable relief under ERISA, this court will order Blue Bell to ensure that the Ogdens' claim is reviewed in good faith under the terms of the Plan.

### C. Attorneys' Fees

ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1), provides, "In any action under this title . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." In determining whether attorneys' fees are appropriate, the Eleventh Circuit has applied the five-factor test established by *Ironworkers Local No. 272 v. Bowen*, 624 F.2d 1255 (5th Cir. 1980). *McKnight v. Southern Life & Health Insurance Co.*, 758 F.2d 1566, 1571-72 (11th Cir. 1985). These factors include: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorney's fees; (3) whether an award of attorney's fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' position. *Bowen*, 624 F.2d at 1266. "No one of these factors is necessarily decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a court should address . . . . In particular types of cases, or in any individual case, however, other considerations may be relevant as well." *Freeman v. Continental Ins. Co.*, 996 F.2d 1116, 1119 (11th Cir. 1993) (citations omitted).

Here, the court notes that Blue Bell's actions do not rise to the level of "bad faith." However, bad faith is not required for a court to award a party attorneys' fees where the party against whom such an award is granted has exhibited some degree of culpability. *Wright v. Hanna Steel Corp.*, 270 F.3d 1336, 1345 (11th Cir. 2001). The evidence tends to show that Blue Bell knew that their third party administrator, ASO, likely failed to process the Ogdens' claim because ASO, at the time the Ogdens' claim was filed, was facing bankruptcy. Yet Blue Bell did little to ensure that the Ogdens' claim was properly reviewed. By the time Blue Bell agreed to treat the Ogdens' claim as an initial filing on December 14, 1999, over two years after the Ogdens first filed their claim with ASO, the Ogdens' first suit had already been filed. Considering the apparent unwillingness of Blue Bell to resolve this matter until the last minute, and the Ogdens' good faith effort to supply ASO and Blue Bell with all requested information, the court finds that the evidence weighs in favor of awarding the Ogdens' attorneys' fees. Additionally, such an award will likely encourage other employers similarly situated as Blue Bell to fulfill their fiduciary duty under ERISA to ensure that benefits claims are properly reviewed. Therefore, the court holds that the Ogdens' should be awarded reasonable attorneys' fees in accordance with § 502(g)(1) of ERISA. The plaintiffs' itemized attorneys' fees, after five years of work at $150 an hour, total $19,755.31. The court finds this to be fair and reasonable.

## III. Conclusion

The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this __18th__ of November, 2002.

_____
Edwin Nelson
United States District Judge